54 A.3d 862

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Patrick John GEHRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided Sept. 27, 2012.

James Francis Donohue, Butler, for Patrick John Gehris.

Benjamin A. Simon, Butler County District Attorney's Office, for Commonwealth of Pennsylvania.

### *ORDER*

PER CURIAM.

**AND NOW,** this 27th day of September, 2012, the Court being evenly divided, the Order of the Superior Court is **AFFIRMED.**

Justice ORIE MELVIN did not participate in the decision of this case.

Justice TODD files an Opinion in Support of Affirmance in which Justices EAKIN and McCAFFERY join.

Chief Justice CASTILLE files an Opinion in Support of Reversal in which Justices SAYLOR and BAER join.

Justice TODD, in support of affirmance.

Although the Opinion in Support of Reversal ("OISR") offers a reasoned, plausible, policy-based rationale for interpreting 42 Pa.C.S.A. § 9795.1(b)(1) as reflecting a recidivist philosophy, I nevertheless believe we are constrained by the clear and unambiguous language chosen by the legislature in enacting this statutory provision to impose the lifetime registration requirement on Appellant under the particular factual circumstances presented by this case. As a result, respectfully, I would affirm the lower courts.

This is a case of a 42–year–old man who deliberately and repeatedly engaged in communications of an explicit sexual nature regarding an individual whom he believed to be a 13–year–old girl. In these conversations, he graphically detailed his fantasies of having sexual encounters with a young girl, solicited nude pictures of the person he thought was the 13–year–old girl, mailed a digital camera with a picture of his penis loaded therein to the person he thought was the 13–year–old girl, methodically arranged a meeting with the per-

son he believed to be the 13–year–old girl at a motel room over 200 miles away from his home, and drove continuously for an entire day specifically to have sex in the motel room with both the person he thought was the 13–year–old girl, and the person whom he believed to be her 19–year–old friend—known to him by the internet chatroom appellation of "joey-GalPa".

For these activities, Appellant was charged in a six-count criminal information with the following offenses, each of which was based on specific aspects of his conduct over the four-month period from October 2006 to February 2007:(1) unlawful contact with a minor for the purposes of engaging in involuntary deviate sexual intercourse [1] (for arranging the meeting at the motel with the undercover state police officer posing as the 13–year–old child); (2) unlawful contact with a minor for the purpose of engaging in sexual abuse of children [2] (for requesting nude photographs from the officer posing as the 13–year–old child); (3) criminal solicitation for the sexual exploitation of children [3] (for soliciting "joeyGalPa" to procure the 13–year–old child for sexual exploitation); (4) criminal solicitation for the sexual abuse of children [4] (for soliciting "joeyGalPa" to obtain nude photographs of a 13–year–old child); (5) criminal solicitation for the corruption of the morals of a minor [5] (for soliciting "joeyGalPa" to obtain a 13–year–old child for sexual activity) and (6) criminal attempt to corrupt the morals of a minor [6] (for his act of driving to the motel to engage in the planned encounter). Appellant elected to plead guilty to counts 3 through 6.

Since Appellant pled guilty to both criminal solicitation for the sexual exploitation of children and criminal solicitation for the sexual abuse of children, the trial court found that Appel-

1. 18 Pa.C.S.A. § 6318(a)(1).
2. 18 Pa.C.S.A. § 6318(a)(5).
3. 18 Pa.C.S.A. §§ 902(a) and 6320.
4. 18 Pa.C.S.A. §§ 902(a) and 6312.
5. 18 Pa.C.S.A. §§ 902(a) and 6301(a).
6. 18 Pa.C.S.A. §§ 901 and 6301(a).

lant was subject to lifetime registration with the Pennsylvania State Police under subsection (b)(1) of the version of 42 Pa.C.S.A. § 9795.1 in effect on August 27, 2008—the date of his sentencing—on which he was informed by the judge of this registration requirement.[7] This statutory section provided:

(a) **Ten-year registration.**—The following individuals shall be required to register with the Pennsylvania State Police for a period of ten years:

\*     \*     \*

(1) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 6312 (relating to sexual abuse of children).

18 Pa.C.S. § 6318 (relating to unlawful contact with minor).

18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

(2) Individuals convicted of an attempt, conspiracy or solicitation to commit any of the offenses under paragraph (1) or subsection (b)(2).

\*     \*     \*

(b) **Lifetime registration.**—The following individuals shall be subject to lifetime registration:

(1) An individual with two or more convictions of any of the offenses set forth in subsection (a).

(2) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3124.1 (relating to sexual assault).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

7. This section has subsequently been amended, *see* Act 98 of 2008, P.L. 1352, effective December 8, 2008, and Act 111 of 2011, P.L. 446, effective December 20, 2011, however the language of Section 9795.1(b)(1) was unaffected by the amendment. Further, as the OISR notes, the current statutory registration scheme will be supplanted, as of December 20, 2012, by a three-tiered approach.

18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age.

   (3) Sexually violent predators.

42 Pa.C.S.A. § 9795.1 (superseded).

The trial court believed the circumstances of this case were similar to those present in the Superior Court's decision in *Commonwealth v. Merolla*, 909 A.2d 337 (Pa.Super.2006), in which that court upheld the trial court's finding that lifetime registration was warranted for an individual who had pled *nolo contendre* to two separate counts of indecent assault and one count of statutory sexual assault, with each count stemming from his improper fondling of a different girl under the age of 16. The trial court rejected Appellant's argument that *Merolla* was distinguishable because there were multiple victims in that case, whereas in his case the only actual victim was society as a whole.

A panel of the Superior Court agreed with the trial court—determining that the language of Section 9795.1(b)(1) was clear and unambiguous in that it referred only to convictions, not to criminal episodes, and it further noted that, under *Merolla*, this statutory provision does not require either a previous conviction, or a sequence of events, in order for the lifetime registration requirement to apply; rather, all that is necessary for lifetime registration is two or more convictions for offenses listed in subsection (a). The court, therefore, deemed it irrelevant that Appellant's individual convictions arose out of the same criminal episode. After considering the relevant statutory provision at issue, in accordance with our well settled principles of statutory interpretation, I would affirm the Superior Court.

A proper interpretation of Section 9795.1(b)(1) must be conducted in accord with our Commonwealth's Statutory Construction Act, which provides that the paramount objective in interpreting a statute is to effectuate the General Assembly's intent. *Id.; see also* 1 Pa.C.S.A. § 1921(a). Our Court generally considers the best means of ascertaining the legislature's intent to be an examination of a statute's plain language.

*Commonwealth v. Hart,* 611 Pa. 531, 28 A.3d 898, 908 (2011). We therefore ascribe to the particular words and phrases of a statute the definitions which they have been accorded in their common and approved usage, unless those words and phrases have "acquired a 'peculiar and appropriate meaning.'" *Commonwealth v. Johnson,* 611 Pa. 381, 26 A.3d 1078, 1090 (2011); *see also* 1 Pa.C.S.A. § 1903(a). Consequently, if the terms of a statute are clear and unambiguous, we will not, in our interpretation, disregard the meaning of the language under the guise of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(b). Nor is there need to resort to the tools of statutory construction set forth in 1 Pa.C.S.A. § 1921(c) if the language of a statute is explicit in its application to a particular situation. *See Oliver v. City of Pittsburgh,* 608 Pa. 386, 394, 11 A.3d 960, 965 (2011) ("[I]t is well established that resort to the rules of statutory construction is to be made only when there is an ambiguity in the provision.")

Further, in interpreting a particular statute, we must remain always mindful of the principle that, "although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say." *Johnson,* 26 A.3d at 1090 (quoting *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 567 Pa. 514, 525, 788 A.2d 955, 962 (2001)). Accordingly, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Johnson,* 26 A.3d at 1090 (quoting *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965)).

It is true that the Statutory Construction Act specifically requires us to construe all penal statutes [8] strictly, *see* 1 Pa.C.S.A. § 1928(b)(1), and I do not quarrel with the observations of the OISR that the consequences of being required to register as a Megan's Law offender are particularly severe in their impact on the registrant's life. OISR at 19. However, as the OISR also notes, our Court has previously determined in *Commonwealth v. Williams,* 574 Pa. 487, 832 A.2d 962

8. A penal statute has been characterized as one that defines a criminal offense and specifies a corresponding fine and punishment. *Commonwealth v. Henderson,* 444 Pa.Super. 170, 663 A.2d 728, 733 (1995).

(2003), that the registration requirements of Megan's Law are not intended to be penal in nature. As we said in that case:

> [T]he legislature's intent in requiring offenders to register with the State Police regarding their whereabouts was not retribution; rather, the legislature's stated intent was to provide a system of registration and notification so that relevant information would be available to state and local law enforcement officials in order to protect the safety and general welfare of the public. Thus, the legislature's actual purpose in enacting the registration provisions was not punishment; rather its purpose was to effectuate, through remedial legislation, the non-punitive goal of public safety.

*Williams,* 574 Pa. at 504, 832 A.2d at 972 (quoting *Commonwealth v. Gaffney,* 557 Pa. 327, 333, 733 A.2d 616, 619 (1999)).

Moreover, Section 9795.1 significantly differs from a sentencing enhancement statute, which **is** penal in nature, in that it does not require a trial court to impose the registration requirement as part of the sentence of the individual who is convicted of any of the triggering offenses set forth in subsections 9795.1(a) and (b). Sentencing enhancement statutes, by their terms, require a court to impose a particular sentence on a defendant convicted of a particular type of offense.[9] By contrast, Section 9795.1 places a requirement **directly** on the convicted defendant to register with the Pennsylvania State Police, with the length of the registration period based on the particular triggering offenses set forth in the statute for which the defendant is convicted. The role of the sentencing court in this process is limited to informing the defendant of his or her registration obligations at the time of sentencing on the

---

9. *See, e.g.,* 42 Pa.C.S.A. § 9714(a) (requiring minimum sentence of ten years total confinement for a person convicted of a crime of violence, if, at the time of the commission of the current offense, the person had been previously convicted of a crime of violence, and 25 years total confinement if, at the time of the commission of the current offense, the person had been previously convicted of two or more crimes of violence arising from separate criminal transactions); 42 Pa.C.S.A. § 9712 (requiring mandatory minimum sentence of five years total confinement for anyone convicted of a crime of violence if he or she visibly possessed a firearm or replica of a firearm, which placed the victim in reasonable fear of death or serious bodily injury, during the commission of the crime).

underlying offenses. 42 Pa.C.S.A. § 9795.3(1). Accordingly, as Section 9795.1(b) does not constitute the imposition of punishment, or enhance the term of a defendant's incarceration, parole, or probation as part of his or her sentence, I deem the presumption we employ that a penal statute must be strictly construed against the Commonwealth not to govern in this instance and, thus, the statute should be read in accordance with the plain meaning of its terms.[10]

The plain language of Section 9795.1(b)(1) specifies: "The following individuals shall be subject to lifetime registration: (1) An individual with two or more convictions of any of the offenses set forth in subsection (a)." This language, when viewed in accordance with its commonly understood and ordinary meaning, requires any individual who is convicted two or more times of the particular offenses set forth in subsection (a) to register for life. Relevant to the question of whether the legislature intended to require lifetime registration in situations where the multiple convictions stemmed from acts which were part of one criminal episode, I deem the legislature, through the use of the unadorned language, "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)," to have elected not to require any particular sequential or temporal ordering of the multiple convictions in order for the lifetime registration requirements to apply. Rather, the legislature simply mandated that, at the point in time at which a defendant acquires two or more convictions for specified sexual offenses against children, the registration requirement is triggered. Since the legislature decided not to include language implicating the timing of the convictions, I do not believe we may judicially engraft such a requirement. *See generally Johnson, supra* (it is improper as a matter of statutory interpretation to add a provision to a statute which the legislature did not include). Consequently, because the timing of the multiple convictions is irrelevant under this

10. Appellant has conceded that Section 9795.1 "is not a recidivist law in a purely punitive way," Appellant's Brief at 15; however, he advances no argument as to why a rule of strict construction should, nevertheless, be applied to a statute which does not directly impose penal sanctions.

statutory provision—even when two convictions arise out of two separate criminal acts against a single victim committed during one criminal episode, as Appellant claims—I believe lifetime registration is compelled. *Cf. Vasquez*, 562 Pa. at 124, 753 A.2d at 809 (holding that defendant's plea of guilty to two counts of selling controlled substances for two separate sales of drugs, each of which occurred on a different day, necessitated the imposition of an enhanced sentence under 18 Pa.C.S.A. § 7508(a)(3)(i), which requires such enhancement if a defendant, at the time of sentencing, "has been convicted of another drug trafficking offense," and specifically noting we were "bound by the unambiguous language of the statute and cannot read language into it that simply does not appear.").

I find no basis to conclude, as does the OISR, that Section 9795.1 reflects a recidivist philosophy which requires departure from this plain meaning interpretative approach. As discussed above, the primary purpose of the registration requirement is not to punish an individual convicted of sexual offenses, but, instead, registration is mandated for the protection of the public. *See Williams*, 574 Pa. at 504, 832 A.2d at 972 ("[T]he legislature's intent in requiring offenders to register with the State Police regarding their whereabouts was not retribution; ... rather its purpose was to effectuate, through remedial legislation, the non-punitive goal of public safety."). Consequently, unlike the "three strikes" sentencing statute at issue in *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990 (1993), *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005), and *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241 (2006)[11] and the mandatory sentencing for possession of child pornography at issue in *Commonwealth v. Jarow-*

---

11. The statute, Section 9714 of the Sentencing Code, establishes "Sentences for second and subsequent offenses" and now provides:

(a) **Mandatory sentence.—**

\*　　\*　　\*

(2) Where the person **had** at the time of the commission of the **current offense previously been convicted** of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice

*ecki,* 604 Pa. 242, 985 A.2d 955 (2009),[12] which imposed successively greater levels of penal discipline for each successive conviction for the same type of crime in order to dissuade an individual from repeating that criminal conduct in the future,[13] the principal objective of the registration requirement is not to alter the convicted individual's behavior through punishment. Further, the specific nature of the language employed in the statutes at issue in those cases—i.e. "[w]here the person had at the time of the commission of the current offense **previously been convicted**," in the case of 42 Pa.C.S.A. § 9714(a)(2) (emphasis added), and "**second or subsequent offense**," in 18 Pa.C.S.A. § 6312(d)(2) (emphasis added)—implies a requirement that there be a separation in time between imposition of the successively greater sanctions in order to give the individual a chance to change his or her behavior in response to the lesser sanction. By contrast, as noted above, the language of Section 9795.1(b)(1) has no such language suggesting temporal separation is required between the commission of the enumerated offenses for the lifetime registration requirement to apply.

of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.
42 Pa.C.S.A. § 9714(a)(2) (emphasis added).

12. The statute, Section 6312 of the Crimes Code, provides:
(d) Child pornography.—
(2) A first offense under this subsection is a felony of the third degree, and a **second or subsequent offense** under this subsection is a felony of the second degree.
18 Pa.C.S.A. § 6312 (emphasis added).

13. The "recidivist philosophy," as reflected in statutorily mandated graduated sentencing enhancements which impose greater punishments upon each successive commission of the same class of criminal offense, recognizes "the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter." *Shiffler,* 583 Pa. at 494, 879 A.2d at 195. Thus, "[t]he point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Id.* (quoting *Dickerson,* 533 Pa. at 299, 621 A.2d at 992).

Although the overall structure of Section 9795.1 conditions its registration scheme, in part, on the nature of particular sexual offenses, since lifetime registration is required of those who commit the arguably more serious offenses enumerated in Section 9795.1(b)(2), I find it significant that the legislature also chose to impose the very same lifetime registration requirement for those convicted of two or more of any of the offenses enumerated in Section 9795.1(a)(1), the vast majority of which are offenses against children. This, from my perspective, evidences a deliberate legislative judgment, consistent with its objective of protecting public safety, to make the differing length of registration requirements dependent not only on the nature of the specific sexual offenses for which an individual is convicted, but, also, on the occurrence of a multiplicity of certain types of offenses, particularly those committed against children. In my view, this reflects a considered determination by the legislature that, in order to protect the safety and general welfare of the public, the frequency with which a convicted defendant is determined to have engaged in certain types of prohibited conduct with children is a particularly important factor in determining whether he or she should be subject to lifetime registration.[14]

Turning to the specific facts of the case at bar, included in the list of offenses set forth in Section 9795.1(a) are the crimes of criminal solicitation to commit the sexual exploitation of children and criminal solicitation for the sexual abuse of children. Appellant entered a guilty plea to both offenses,

14. I acknowledge the legitimate concern of the OISR regarding the advent of modern technology, and its undeniable potential to result in an individual compiling multiple criminal violations during one criminal episode or course of conduct. OISR at 13. Thus, that factor, coupled with the multiplicity of criminal statutes covering the very same conduct, makes it conceivable that an individual can commit a host of statutory offenses with but one action. Here, however, Appellant was convicted of two of the offenses enumerated in Section 9795.1(a)(1) for two separate criminal acts involving one minor victim, and he engaged in a repeated pattern of criminal conduct involving similar behavior for a four-month period; hence, this case does not present the question of whether Section 9795.1(b)(1) requires imposition of lifetime registration in instances where a defendant is convicted of two or more of the offenses listed in Section 9795.1(a)(1) for only one criminal act.

thereby admitting that he committed the act of soliciting the undercover state police officer posing as a 19–year–old female to obtain nude photographs of a person whom he believed to be a 13–year–old child, and also that he committed the act of soliciting the undercover state police officer posing as the 19–year–old female to procure the 13–year–old child so that he could engage in sexual activity with the child, which is deemed to be sexual exploitation.[15] As such, Appellant's guilty plea for each separate act, which constituted a separate criminal offense once it was accepted by the trial court and sentence was imposed, became a conviction for that offense. *See Commonwealth v. Kimmel,* 523 Pa. 107, 111, 565 A.2d 426, 428 (1989) ("When the term 'conviction' is used in a statute, it means 'the ascertainment of the guilt of the accused and judgment thereon by the court' "); *Com. ex rel. Hough v. Maroney,* 425 Pa. 411, 414, 229 A.2d 913, 914–15 (1967) ("A plea of guilty (when accepted and entered by the Court) is the equivalent of a conviction and a verdict of guilty by a jury."). Therefore, I regard the clear terms of Section 9795.1(b)(1) as requiring Appellant to register with the Pennsylvania State Police for life, since he had two convictions for offenses specifically listed in Section 9795.1(a). Consequently, I would affirm the decisions of the lower courts.

Justices EAKIN and McCAFFERY join the Opinion in Support of Affirmance.

Chief Justice CASTILLE, in support of reversal.

The issue in this appeal is whether the lifetime registration provisions of Megan's Law, set forth at 42 Pa.C.S. § 9795.1(b), should be imposed when two of the statute's enumerated offenses are committed in the context of a single nonviolent course of criminal conduct. The trial court, the Superior Court, and the Opinion in Support of Affirmance ("OISA") conclude that lifetime registration is warranted, without leeway, whenever "two or more" enumerated offenses are com-

---

15. 18 Pa.C.S.A. § 6320(c) defines "sexual exploitation" as "[a]ctual or simulated sexual activity or nudity arranged for the purpose of sexual stimulation or gratification of any person."

mitted by a defendant, regardless of whether the offenses are committed during a single episode, are crimes of violence or inchoate offenses, or if there are multiple, single, or even no actual human victims. For the reasons set forth below, we would vacate the Superior Court's order, vacate the portion of appellant's sentence imposing lifetime registration, and return this matter to the trial court for imposition of the ten-year registration requirement.

In late 2006, appellant began using an internet chat room where he corresponded with an individual whom he believed to be a nineteen-year-old female who called herself "joeyGalPa." "joeyGalPa" was actually a Pennsylvania State Police officer trained to pose online as a teenager in order to collect evidence and investigate potential sexual predators. Appellant's initial exchanges with "joeyGalPa" included suggestions and requests by appellant to meet any younger girls (roughly eleven to thirteen years of age) that "joeyGalPa" might know. In early 2007, appellant emailed "joeyGalPa" that he fantasized about being with two "girls" sexually. Appellant wrote that he wanted to talk to the younger girl on the phone and asked "joeyGalPa" to take pictures of the younger girl and send them to him; appellant also emailed "joeyGalPa" a picture of his face and shoulders. In early February 2007, appellant sent a digital camera to an address he was given, which was monitored by the state police, who discovered that the camera had on it several pictures of appellant's penis. About ten days later, appellant called a phone number he had been given, which was answered by two female state police officers posing as "joeyGalPa" and the younger girl. During the course of conversation, appellant asked for a picture of the younger girl's breasts, arranged an encounter to take place on February 19, 2007 at a Comfort Inn in Butler County, approximately 200 miles away from appellant's residence in Lancaster, and suggested that the younger girl should have some alcohol beforehand to relax herself. Appellant arrived at the Comfort Inn on the arranged date and time, but evidently had second thoughts or suspected he might be apprehended; he turned his vehicle around in the parking lot and attempted to

leave, but was arrested by state police who were waiting for him.

Appellant was charged in April 2007 with one count of first-degree felony unlawful contact with a minor, one count of second-degree felony unlawful contact with a minor, one count of second-degree felony criminal solicitation to commit sexual exploitation of a child, one count of second-degree felony criminal solicitation to commit sexual abuse of a child, one count of first-degree misdemeanor criminal attempt to corrupt a minor, and one count of first-degree misdemeanor criminal solicitation to corrupt a minor.[1]

In January 2008, appellant pleaded guilty to all three solicitation charges and the single attempt charge, which amounted to two second-degree felonies and two first-degree misdemeanors. Upon pleading guilty to predicate offenses under Megan's Law (criminal solicitation to commit sexual exploitation of a child and criminal solicitation to commit sexual abuse of a child), appellant was ordered to undergo evaluation by the Pennsylvania Sexual Offender Assessment Board ("SOAB"). In April 2008, the SOAB determined that appellant was not a sexually violent offender and in August 2008, appellant's sentencing proceeding took place. Appellant's expert, Paul Mark Bernstein, a psychologist who had served on the SOAB and testified in numerous similar proceedings, stated that appellant had serious mental and emotional troubles that had been triggered by the dissolution of his life over the past several years, professional and marital problems, the arrest and prosecution for the crimes in this appeal, the subsequent loss of his job, home, and family, and the prospect of imprisonment and further punitive measures as a result of his criminal actions. Dr. Bernstein believed that appellant understood, regretted, and accepted responsibility for his actions. Dr. Bernstein did not see appellant as psychotic, psychopathic, or suffering from neurosis or a serious mental abnormality. Dr. Bernstein

1. 18 Pa.C.S. § 6318(a)(1); 18 Pa.C.S. §§ 6318(a)(5), (6); 18 Pa.C.S. § 902(a)/18 Pa.C.S. § 6320; 18 Pa.C.S. § 902(a)/18 Pa.C.S. § 6312(b); 18 Pa.C.S. § 902(a)/18 Pa.C.S. § 6301(a)(1); & 18 Pa.C.S. § 901(a)/18 Pa.C.S. § 6301(a)(1).

conceded that appellant's criminal conduct was disturbing, distressing, reprehensible, and borderline pedophiliac, but concluded that overall, appellant was a good candidate for rehabilitation as long as he continued treatment and therapy. N.T., 8/27/08, at 14–55. The trial court ultimately imposed total incarceration of one to two years, to be followed by eight years of probation.

At appellant's sentencing, the sides also debated whether he should be subject to the ten-year period of registration pursuant to Section 9795.1(a) of Megan's Law, which is triggered when a defendant is convicted of committing (or attempting, conspiring, or soliciting to commit) any of ten enumerated offenses upon minors or children,[2] or the more stringent lifetime registration mandated in Section 9795.1(b), which is triggered when a defendant is convicted of "two or more convictions of any of the offenses set forth in subsection (a)" or one of five more serious enumerated offenses upon minors or children.[3],[4] The Commonwealth sought lifetime registration on

**2.** 18 Pa.C.S. § 2901 (relating to kidnapping) where the victim is a minor; 18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle or structure); 18 Pa.C.S. § 3124.2 (relating to institutional sexual assault); 18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher; 18 Pa.C.S. § 4302 (relating to incest) where the victim is 12 years of age or older but under 18 years of age; 18 Pa.C.S. § 5902(b) or (b.1) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor; 18 Pa.C.S. § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances) where the victim is a minor; 18 Pa.C.S. § 6312 (relating to sexual abuse of children); 18 Pa.C.S. § 6318 (relating to unlawful contact with minor); & 18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

**3.** 18 Pa.C.S. § 3121 (relating to rape); 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse); 18 Pa.C.S. § 3124.1 (relating to sexual assault); 18 Pa.C.S. § 3125 (relating to aggravated indecent assault); & 18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age.

**4.** The General Assembly has recently amended Megan's Law, effective December 20, 2012. Section 9795.1 will be replaced by a revised version at 42 Pa.C.S. §§ 9799.14 and 9799.15. The amended scheme will maintain the graduated structure of Section 9795.1, but use a three-tiered approach, in contrast to the two-tiered approach of Section 9795.1. Tier I offenses, such as viewing or possessing child pornography, will result in a fifteen-year registration requirement; Tier II offenses, such as sexual abuse of minors, unlawful contact with minors,

the grounds that appellant pleaded guilty to two of the requisite enumerated subsection (a) offenses. Appellant's counsel responded that the "two or more" language in the provision should pertain only to prior Megan's Law convictions, which would mark the defendant as an un-rehabilitated repeat offender warranting the more serious penalty of lifetime registration. Appellant, his counsel asserted, may have committed more than one enumerated offense, but the offenses in question arose from the same criminal course of action or episode, were nonviolent, and appellant had no prior record at all of any Megan's Law offenses. The trial court agreed with the Commonwealth, noting that subsection (b) has no exception that would allow contemporaneous offenses or convictions to be the basis for imposing the shorter ten-year registration requirement. N.T., 8/27/08, at 67–69.

Appellant's post-sentence motion challenging the lifetime registration requirement was denied by the trial court.[5] The court relied upon *Commonwealth v. Merolla*, 909 A.2d 337 (Pa.Super.2006) for the position that a defendant convicted of more than one subsection (a) offense (in that case, indecent assault on different minor victims), even if the convictions occur at a single proceeding, is subject to the lifetime registration requirement because, unlike other sentencing schemes, Section 9795.1(b) does not distinguish between offenses that occur separately or sequentially and offenses that arise from the same criminal episode. The trial court rejected appellant's attempt to distinguish *Merolla;* appellant had argued that the defendant in *Merolla* committed his offenses upon multiple victims over several years, whereas appellant engaged in only one nonviolent (albeit continuing) course of

or depicting or disseminating child pornography, will result in a twenty-five year registration requirement; and Tier III offenses, such as rape and "[t]wo or more" convictions of Tier I or Tier II offenses, will result in a lifetime registration requirement. This appeal concerns the version that was current at the time of appellant's sentencing in August 2008.

5.  The record refers to a hearing on the motion having been scheduled for October 21, 2008, and the court's opinion refers to defense counsel's "argument," but no transcript for any proceedings from that date appears in the record.

contact over a relatively brief period of time, and there were no actual individual human victims harmed through his actions. Trial Ct. Op., 10/29/08, at 1–2.[6]

The Superior Court affirmed in a March 2010 memorandum opinion. To the panel, Section 9795.1(b) expressly and clearly requires lifetime registration when an offender has "two or more" convictions of any of the subsection (a) offenses. The panel rejected appellant's argument that if the two convictions arise out of a single nonviolent criminal episode, then lifetime registration may not be warranted. Like the trial court, the panel cited *Merolla* for the proposition that there need not be a prior conviction for an offense or offenses committed earlier in time in order for lifetime registration to be imposed; the panel saw no basis for a sequential or chronological approach. To the panel, it was immaterial whether subsection (a) offenses or convictions are contemporaneous; the mere fact of multiple convictions mandates lifetime registration. Super. Ct. Op., 3/26/10, at 5–6.

This Court granted appellant's petition for allowance of appeal, rephrasing for clarity the question presented: "Does the lifetime registration requirement under 42 Pa.C.S.A. § 9795.1(b)(1) apply to those who plead guilty to two or more listed offenses when those offenses arise out of one, nonviolent criminal episode?" *Commonwealth v. Gehris*, 608 Pa. 568, 13 A.3d 462 (2011).

Appellant argues generally that imposing lifetime registration when an offender's multiple convictions arise from a single nonviolent criminal episode undermines the recidivist philosophy incorporated into the graduated statutory scheme. Appellant points out that a number of similarly graduated sentencing schemes, such as those for driving under the influence and the "three strikes" law regarding crimes of violence at 42 Pa.C.S. § 9714, entail some passage of time between offenses and/or convictions so that the offender has some opportunity to demonstrate remorse and rehabilitation. Should the offender squander the initial leniency and commit

6. Upon appellant's appeal to the Superior Court, the trial court drafted a one-page Rule 1925(a) opinion referencing this opinion.

another offense, then the subsequent conviction will result in the harsher measures appropriate for repeat offenders. Appellant's Brief at 10–13.

Appellant also asserts that *Merolla*, upon which both lower courts relied, was decided on an improper reading of Section 9795.1 in comparison with the "three strikes" law. According to appellant, Section 9795.1 should be read on its own terms, and since it is silent on whether multiple convictions are to be understood as sequential, it is ambiguous and should be construed in appellant's favor, resulting in the ten-year registration requirement as opposed to the lifetime registration requirement, which appellant posits should be deployed only when a true "repeat offender" fails to mend his or her ways. Appellant's Brief at 13–15.

Appellant refers as well to *Commonwealth v. [Gomer] Williams*, 574 Pa. 487, 832 A.2d 962 (2003), in which this Court concluded that in enacting Megan's Law, the General Assembly had public safety concerns primarily in mind, but also that the Legislature did not intend the registration, reporting, and counseling requirements to be punitive or unlimited. Appellant reads *Williams* as implying that when possible, "rehabilitation of the offender," "reducing the likelihood of recidivism," and "ensuring that offenders do not relapse into harmful behavior" are also legislative goals, even if they may be secondary to public safety.[7] Appellant's Brief at 15–16 (citing *Williams*, 832 A.2d at 977–81).

As a matter of logic, appellant continues, the tiered framework of Section 9795.1 implies a recidivist mindset that would be defeated by "mechanical" application, which was the flaw committed by the courts below and in *Merolla*. Appellant posits that under *Merolla*, a first-time nonviolent offender (like himself) who commits multiple "lesser" offenses simulta-

7. As will be discussed further *infra*, although these phrases do appear in *Williams*, that opinion was careful to note that, in deciding that the lifetime registration and other requirements for sexually violent predators did not violate due process and were not unconstitutionally excessive or vague, the Court did not pass on questions regarding the extent to which sexually violent predators may be successfully "cured," as that was not part of the record at hand. 832 A.2d at 983.

neously is given no chance to alter his or her future conduct. That offender would be automatically considered no different for registration purposes from defendants who commit the most serious violent offenses against minors and children, such as rape and incest, and who are formally deemed sexually violent predators. Appellant explains that in light of the nonviolent nature of his offenses, his voluntary submission to treatment and therapy, and the testimony by Dr. Bernstein that appellant is a "good candidate" for rehabilitation and reform, ten-year registration, along with supervised probation and continued counseling, is appropriate and sufficient while lifetime registration is disproportionately severe. Appellant's Brief at 16–21.

Alternatively, appellant argues that *Merolla* is factually distinguishable and inapplicable. In *Merolla*, the defendant pleaded guilty to two counts of indecent assault and one count of statutory sexual assault upon three different victims in separate incidents over several years. While not belittling the seriousness or "repugnance" of his own offenses, appellant compares his own lack of any past offenses, the nonviolent nature of the actions he committed here, which occurred in the course of a single criminal episode over a few weeks, and notes that since he was apprehended through a sting operation, no actual minor or child victims were harmed. Appellant adds that the rapid recent advancement of technology, such as internet chatting, makes it possible now for more than one enumerated offense, such as obscenity or unlawful contact, to occur during a single online encounter that would subject the offender to lifetime registration. To appellant, this result seems incongruous with how Megan's Law was intended to operate when it was adopted in 1995 and when the two-tiered registration provision was enacted in 2000. Appellant's Brief at 23–24.

The Commonwealth responds that because the registration requirements of Megan's Law are not punitive, per this Court's opinion in *[Gomer] Williams*, there is no basis for construing Section 9795.1 strictly in appellant's favor. The Commonwealth reasons that this appeal rests on the plain

language of Section 9795.1, citing *Commonwealth v. Vasquez,* 562 Pa. 120, 753 A.2d 807 (2000), for the point that courts may not "read language into" a statute if the language is clear as it stands: "Where there is no ambiguity, there is no room for interpretation." *Id.* at 809 (quoting *Commonwealth v. [Tyrone] Williams,* 539 Pa. 249, 652 A.2d 283, 285 (1994)). To the Commonwealth, Section 9795.1 "means what it says": a defendant convicted of "two or more" enumerated offenses will be subject to lifetime registration regardless of whether the offenses or convictions were simultaneous or in sequence.

Nor does the Commonwealth concede that appellant's conduct amounted to a "single criminal episode." Rather, the Commonwealth describes an "extended period of criminal conduct" during which appellant committed all of the crimes to which he ultimately pleaded guilty. The Commonwealth argues that to coagulate these separate and distinct offenses would afford defendants like appellant a "volume discount" allowing commission of any number of Megan's Law offenses that would count only as one, and lead to imposition of the lesser ten-year registration period—an improper windfall. Commonwealth's Brief at 5–7.

This issue presents a question of statutory interpretation and application, which in turn presents a question of law. Our review, therefore, is plenary and non-deferential. *See Commonwealth v. Conklin,* 587 Pa. 140, 897 A.2d 1168, 1175 (2006). It is well-settled that the object of statutory interpretation is to ascertain the intention of the General Assembly and that the plain language of the statute is generally the best indicator of such intent. 1 Pa.C.S. § 1921(a), (b). The words of a statute shall be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a). We will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous. 1 Pa.C.S. § 1921(c); *see also Commonwealth v. Diodoro,* 601 Pa. 6, 970 A.2d 1100, 1106 (2009). Every statute shall be construed, if possible, to give effect to all its provisions, and when ascertaining legislative intent, there is a presumption that the General Assembly does not intend a result that is

absurd, impossible of execution or unreasonable. 1 Pa.C.S. § 1922(1).

If, however, it is determined that the plain language of a statute reveals ambiguity, there are a number of tools available to facilitate interpretation. These include: the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; the contemporaneous legislative history; and any available legislative and administrative interpretations of the statute in question. *See* 1 Pa.C.S. § 1921(c).

Section 9795.1 of Megan's Law requires offenders to register with state police and notify community authorities in the area where they reside. The relevant language in the version current at the time of appellant's sentencing on August 27, 2008, read as follows:

(a) Ten-year registration.—The following individuals shall be required to register with the Pennsylvania State Police for a period of ten years:

(1) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 2901 (relating to kidnapping) where the victim is a minor.

18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle).

18 Pa.C.S. § 3124.2 (relating to institutional sexual assault).

18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher.

18 Pa.C.S. § 4302 (relating to incest) where the victim is 12 years of age or older but under 18 years of age.

18 Pa.C.S. § 5902(b) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor.

18 Pa.C.S. § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances) where the victim is a minor.

18 Pa.C.S. § 6312 (relating to sexual abuse of children). 18 Pa.C.S. § 6318 (relating to unlawful contact with minor). 18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

(2) Individuals convicted of an attempt, conspiracy or solicitation to commit any of the offenses under paragraph (1) or subsection (b)(2).

\*     \*     \*

(b) Lifetime registration.—The following individuals shall be subject to lifetime registration:

(1) An individual with two or more convictions of any of the offenses set forth in subsection (a).

(2) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3124.1 (relating to sexual assault).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age.

(3) Sexually violent predators.

\*     \*     \*

42 Pa.C.S. § 9795.1. This is a graduated, two-tiered scheme. *See Commonwealth v. Wilson*, 589 Pa. 559, 910 A.2d 10, 18 (2006) (describing ten-year registration requirements of Section 9795.1(a) as "milder sanction" than lifetime requirements set forth in Section 9795.1(b)).

In and of itself, subsection (b)(1), which imposes the lifetime registration requirement upon "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)" is not ambiguous or unclear. The problem confronted in this appeal arises when subsection (b)(1) is applied to an offender who has committed "two or more" subsection (a) offenses during the course of a single continuous criminal episode or course of conduct. As appellant points out, in our age of ever more rapid and varied technological communica-

tions, it is increasingly likely that this circumstance will arise often or in almost every case. This reveals an unfortunate lack of specificity in potential application of Section 9795.1. If the statutory scheme entails a "recidivist philosophy," as discussed in greater depth *infra*, then mechanical imposition of the lifetime registration requirement may not always be proper.

The essence of the recidivist philosophy is to afford first-time offenders (or offenders convicted of less serious offenses) some amount of time within which to modify their behavior away from criminality. Should they fail to take advantage of the opportunity, and transgress a second time or more, the "next" sentence will be more severe. The general concept has long been part of the common law. In 1716, English Serjeant-at-law William Hawkins wrote: "[W]here a Statute makes a second Offence Felony, or subject to a heavier Punishment than the first; it is always implied, That such second Offence ought to be committed after a Conviction for the first; from whence it follows, That if it be not so laid in the Indictment, it shall be punished but as the first Offence; for the gentler Method shall first be tried, which perhaps may prove effectual." WILLIAM HAWKINS, PLEAS OF THE CROWN, bk. I, c. 40, § 3 (1716).[8]

In two recent cases, the U.S. Supreme Court has conveyed that certain sentencing schemes do imply a recidivist philosophy. *See Sykes v. United States,* —— U.S. ——, ——, 131 S.Ct. 2267, 2277, 180 L.Ed.2d 60 (2011) ("The provision [of the Armed Career Criminal Act at 18 U.S.C. § 924(e)] instructs potential recidivists regarding the applicable sentencing re-

---

**8.** Hawkins (1673–1746) is generally viewed as one of the authoritative historical commentary sources of the common law, along with the writings of Edward Coke (1552–1634), Matthew Hale (1609–7676), William Blackstone (1723–1780), and Edward Hyde East (1764–1847). *See, e.g., Payton v. New York,* 445 U.S. 573, 594–98, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *see also id.* at 604–07, 100 S.Ct. 1371 (White, J., dissenting, joined by Burger, C.J., & Rehnquist, J.); John F. Stinneford, *Rethinking Proportionality Under the Cruel and Unusual Punishments Clause,* 97 VA. L. REV. 899, 943 n. 208 (2011) (citing Hawkins in discussion of origin of Cruel and Unusual Punishments Clause in United States Constitution).

gime if they again transgress. It states an intelligible principle and provides guidance that allows a person to 'conform his or her conduct to the law.' "); *United States v. Rodriquez*, 553 U.S. 377, 385, 128 S.Ct. 1783, 170 L.Ed.2d 719 (2008) ("[A]n offense committed by a repeat offender is often thought to reflect greater culpability and thus to merit greater punishment. Similarly, a second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation [pursuant to the Armed Career Criminal Act at 18 U.S.C. § 924(e) ]."). In the context of probation, other cases by the High Court have also portrayed, eloquently, a similar viewpoint. *See Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 77 L.Ed. 266 (1932) (stating that probation "was designed to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable"); *United States v. Murray*, 275 U.S. 347, 357–58, 48 S.Ct. 146, 72 L.Ed. 309 (1928) ("The great desideratum [of probation] was the giving to young and new violators of law a chance to reform.... If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation.... Probation is the attempted saving of a man who has taken one wrong step, and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence.").

This Court has explored the recidivist philosophy in several contexts. *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990 (1993) addressed the "three strikes" statutory scheme at 42 Pa.C.S. § 9714, which sets mandatory sentencing for offenders convicted of "second and subsequent" violent offenses within seven years of a prior conviction of a crime of violence. At that time, the second-time offender minimum was five years; it is now ten years. The defendant in *Dickerson* committed two rapes of two different women on the same night. He was convicted by a jury of the first rape in 1988 and sentenced to seven and one-half to fifteen years in prison.

He pleaded guilty to the second rape in 1989 and was sentenced under Section 9714 to seven and one-half years in prison, consecutive to the first sentence. This Court, however, held that Section 9714 did not apply because in the defendant's case, the first rape conviction in 1988 did not occur within seven years prior to commission of the rape that led to the second conviction. This conclusion was based in part upon analysis of the statutory language, but also upon the "recidivist philosophy" that was found to be implicated. Although the Court did not use the term "recidivist philosophy," the theory was embodied in the *Dickerson* Court's view that legislation such as Section 9714 aims "to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Id.* at 992. The *Dickerson* Court quoted from *Commonwealth v. Sutton,* 125 Pa.Super. 407, 189 A. 556, 558 (1937), to describe its approach:

> It was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone, except the incorrigible one, who after being reproved, 'still hardeneth his neck.' If the heavier penalty prescribed for the second violation ... is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.

*Dickerson,* 621 A.2d at 992. Citing Pennsylvania cases dating back to 1901, the *Dickerson* Court concluded: "The rule, though hoary with age, is nonetheless viable." *Id.* As such, imposition of the mandatory minimum sentence was deemed not to be appropriate in *Dickerson.*[9]

Since *Dickerson* was handed down in 1993, this Court has on several occasions addressed how and when consideration of

---

**9.** Mr. Justice Larsen issued a dissenting opinion in *Dickerson* arguing that the plain language of the statute mandated imposition of the mandatory minimum and that the majority improperly disregarded that language in pursuit of the law's perceived spirit. The result, the dissent felt, afforded violent criminals the freedom to commit multiple crimes without fear of mandatory sentencing so long as the timing between crimes was right. 621 A.2d at 994 (Larsen, J., dissenting, joined by Papadakos, J.).

the recidivist philosophy is appropriate. A year later in *[Tyrone] Williams*, this Court noted that the recidivist philosophy "is a valid tool in interpreting ambiguous statutory language," but it is not a "constitutional principle or mandate," and "possesses no authority which would override clearly contrary statutory language." As such, the Court found that the provision at issue in that case, 18 Pa.C.S. § 7508, which sets mandatory enhanced sentences for drug trafficking convictions, was clear and unambiguous, requiring enhanced sentencing "if at the time of sentencing the defendant has been convicted of another drug trafficking offense[.]" The defendant in *[Tyrone] Williams* had committed his offenses in 1988 and 1991. He pleaded guilty and was convicted of both offenses in October 1991 and then was sentenced on both convictions in November 1991. This Court held that even though the October 1991 convictions arose at the same time, the mandatory minimum sentence of three years in prison and fine of $10,000 were warranted because the relevant trigger for Section 7508 was the time of sentencing (November 1991), not the time of offense commission or conviction. 652 A.2d at 284–86. *See also Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807 (2000) (Section 7508 makes no distinction between multiple convictions included in single criminal complaint as long as offenses are separate and distinct from each other).[10]

In *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005), this Court addressed squarely what had been only a component part of *Dickerson*: "[W]hether the recidivist philosophy influences or controls the interpretation of the three strikes law" at 42 Pa.C.S. § 9714.[11] In *Shiffler*, the defendant's first violent crime conviction was based upon a 1997 guilty plea to three separate burglaries and his "second" and

10. The *Vasquez* majority's decision to uphold imposition of a harsher sentencing scheme engendered two responsive opinions in support of the recidivist philosophy. *See Vasquez*, 753 A.2d at 811 (Cappy, J., concurring); *id.* at 811–13 (Nigro, J., dissenting).

11. The potential relationship between the "three strikes" law and the recidivist philosophy arose previously in *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003), but the issue was deemed waived in light of the defendant's failure to raise and preserve the claim pursuant to Pa.R.A.P. 302(a). *Id.* at 1135.

"third" violent crime convictions were based upon a guilty plea to burglary, aggravated assault, theft, and resisting arrest arising from an incident that occurred in 2001. Although in *Shiffler*, Section 9714 was not ambiguous with regard to the defendant's circumstances, he argued that mechanical application of the statute, which was silent as to "sequentiality"—*i.e.*, whether in order to be "strikes," convictions for predicate crimes must be separated by some time period—led to ambiguity and even absurdity in circumstances like his own. This Court agreed:

> The anomaly of appellant's situation is thus: while he has not ever been—nor could he have been—sentenced as a second-strike offender, a reflexive application of subsection 9714(a)(2) would subject him to sentencing as a third-strike offender.... We do not believe that such a result was intended by the General Assembly in adopting the graduated scheme of recidivist sentencing which is reflected in Section 9714.

*Id.* at 194 (emphasis omitted). Recalling *Dickerson*, the *Shiffler* Court concluded that "graduated" penalty schemes implicitly draw distinctions between offenders who can and do reform themselves and those who cannot or will not do so: "The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law." 879 A.2d at 195. By focusing on the manner in which the statute operated as a whole, this Court understood that without an implied sequentiality component, representing the link between punishment, subsequent "foregone opportunities" to reform, repeat criminality, and the need for enhanced punishment, deployment of schemes like Section 9714 could betray their underlying rationale aligned with the recidivist philosophy. *Id.* The appropriate disposition, therefore, was to sentence the defendant as a second-strike offender subject to ten years in prison rather than as a third-strike offender subject to twenty-five years in prison. *Id.* at 194–96.

Building upon *Shiffler*, this Court held in *Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241 (2006), that the defendant, who had two prior violent crime convictions (aggravated assault in 1987 and robbery in 1996), and then committed two crimes—robbery and burglary—in a June 2002 incident, could not be "double-charged" as, concurrently, a third and fourth strike offender for the 2002 offenses. In the Court's view, because the 2002 offenses arose out of a single criminal episode and the defendant had no opportunity to reform, they should be treated together as a third strike. *Id.* at 1251–52.

Most recently, in *Commonwealth v. Jarowecki*, 604 Pa. 242, 985 A.2d 955 (2009), this Court considered 18 Pa.C.S. § 6312, which criminalizes possession and dissemination of sexually explicit depictions of children. In *Jarowecki*, the question was whether the defendant's eight concurrent convictions were to be treated as one "first" offense, which would be a third-degree felony, and seven "second or subsequent" offenses, which would be more serious second-degree felonies under the statute. There was no question raised to dispute that the eight convictions were separate crimes and not part of a single episode. This Court, construing the terms "first" and "second or subsequent" in Section 6312, first noted that "[s]uperficially considered," imposition of the more punitive grading scheme was viable; nevertheless, the Court continued, "the object to be attained is the authentic password to the true meaning of the words of a law." *Id.* at 966 (internal quotation marks omitted). Following a thorough review of recidivist philosophy precedent, the *Jarowecki* Court concluded that Section 6312 embodied a recidivist philosophy, vacated the harsher grading that had been imposed by the lower courts, and remanded for resentencing. *Id.* at 961–69.

In light of the foregoing, we are satisfied that Section 9795.1, which sets forth a graduated scheme for Megan's Law registration, similar in nature to the graduated schemes discussed in this Court's prior case law, encompasses the recidivist philosophy in addition to its perhaps more obvious goals of public protection and deterrence. Of course, registration may not be punitive for purposes of the constitutional protections

afforded to offenders, as this Court concluded in *[Gomer] Williams.* Nevertheless, registration obviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability to earn a livelihood, his housing arrangements and options, and his reputation. *See also Fross v. County of Allegheny,* 610 Pa. 421, 20 A.3d 1193 (2011).

The "two or more convictions" language in subsection (b) seems clear and unambiguous on the surface. But if Section 9795.1 is viewed as a whole and the General Assembly's legislative findings and declaration of policy at 42 Pa.C.S. § 9791 are read closely, it is clear that the primary concern is with sexually violent predators. Considering the nine subsections in Section 9791, the term "sexually violent predator" appears nine times, particularly in the provision addressing repeat offenders: "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9791(a)(2). References to nonviolent offenders are comparatively few, just four in all, and two of these pertain specifically to recent amendments accounting for the circumstance of released "offenders" who may be homeless or without a "fixed place of habitation." *See* 42 Pa.C.S. § 9791(a)(1) & (b)(3); *see also Commonwealth v. Wilgus,* 40 A.3d 1201 (Pa.2012).

It is evident that in drafting Section 9795.1, the General Assembly meant to set up a graduated registration scheme. In this tiered approach, more serious (primarily violent) offenders and "true" recidivists who squander a given opportunity to reform are understandably subject to lifetime requirements. By contrast, lesser, first-time offenders, especially those who are nonviolent, receive an opportunity for rehabilitation and eventual freedom from the requirements if they "stay on the path" for ten years.

Without in any way condoning the criminal conduct that led appellant to his current circumstances, we would conclude that the record in this case directs application of the ten-year

registration requirement. Appellant's two Megan's Law offenses were nonviolent, perhaps triggered by situational problems in his marriage and career, and arose out of the same course of conduct, which ultimately did not result in direct harm to any actual victims. Appellant had no criminal past, much less a history of Megan's Law offenses, and was taken into custody without resisting. In open court, he expressed remorse and regret and accepted responsibility for his actions. He voluntarily undertook psychotherapy and has embraced the treatment, was not found to be a sexually violent predator and, in fact, was described by a former SOAB member as a good candidate for rehabilitation. It is true that appellant was convicted of "two or more" Megan's Law subsection (a) offenses, and without consideration of how this statutory scheme falls within the sphere of recidivist philosophy legislation detailed above, a strict, mechanical application of Section 9795.1(b) would result in imposition of the lifetime registration requirement. But, we would conclude that Section 9795.1 embodies the recidivist philosophy and reflects a belief that first-time and lesser offenders are capable of reform and rehabilitation if given an opportunity to do so under the still-punitive aegis of relatively lighter discipline, as well as the threat of harsher treatment next time, should there be a next time. We would therefore hold that a defendant convicted of "two or more" subsection (a) offenses are subject to the lesser sanction of the ten-year registration requirement so long as it is clear that the offenses were part of the same course of criminal conduct. We would therefore vacate the Superior Court's order, vacate the portion of appellant's sentence imposing lifetime registration, and return this matter to the trial court for imposition of the ten-year registration requirement.

For the above reasons, we would vacate and remand.

Justices SAYLOR and BAER join this opinion.